CARL HANDLER *vs.* A. ROBERT HIRONS.

DECEMBER 2, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J.    This is an action of assumpsit against the defendant as the indorser of a promissory note for $140, dated January 12, 1934, and payable to the order of the plaintiff ninety days after date. At the close of the evidence, the trial justice granted the plaintiff's motion for the direction of a verdict in his favor.

The evidence shows that the maker of the note was the brother of the defendant herein, and that the plaintiff was the brother's landlord, and was pressing him for unpaid rent. The note was delivered by the maker to the plaintiff, and was subsequently left by the latter at the Industrial Trust Company, Washington Park Branch, for collection. Demand for payment was made at maturity on the maker at the bank, but the note was not paid, and it is claimed by the plaintiff that due notice of dishonor was then given to the defendant.

The chief defense to this action is that no legal and proper demand was made on the maker of the note, and that, therefore, the indorser, who is here sued, is discharged. The evidence bearing upon the form of the note, when it was indorsed by the defendant and delivered to the plaintiff, becomes important in determining the validity of this contention. An examination of the note in evidence shows that it was filled out in handwriting on the usual printed blank form with the exception of the words, "Industrial Trust Co., Washington Park Branch", which were stamped thereon by a rubber stamp immediately following the printed words, "payable at".

The important facts leading up to the execution of the promissory note in this case, as testified to by the defendant, are as follows. In October 1933, the plaintiff agreed to accept a note for $170 from the defendant's brother for overdue rent, provided the note was suitably indorsed. The defendant, on being asked by his brother, refused to indorse the note until he had seen and talked personally with the

plaintiff. A day or two thereafter the three persons met at the plaintiff's store on Warwick avenue in Cranston, and, after discussing the situation, they reached an agreement, as a result of which defendant's brother gave the plaintiff a three-months note for $170, dated October 12, 1933, which defendant indorsed. He also testified that the conversation which led to his indorsing the note was held partly in the hearing of his brother and partly after the latter had stepped aside at the defendant's request, and that in his private talk with the plaintiff, it was understood between them that the indorsement was largely to assist the plaintiff "in having my brother pay that note, cutting it down every three months."

The defendant further testified that he refused to have the note made payable at any bank, and informed the plaintiff at that time that, as far as the defendant was concerned, all transactions in connection with the note were to take place at the plaintiff's store.

When the note of October 12, 1933, came due, the plaintiff accepted a renewal note for the unpaid balance of $140, which is the note in suit. The defendant testified that his brother brought this note to him, and that he endorsed it in the absence of the plaintiff, without specifying any place of payment in the note, relying upon his understanding with the plaintiff that payment was to be made at the plaintiff's store, where the original transaction took place. The defendant, in direct examination, testified positively, and, in cross-examination, stated that, to the best of his recollection, the words, "Industrial Trust Co., Washington Park Branch", were not stamped on the note when he indorsed it for his brother.

The plaintiff denied that he had any conversation in his store with the defendant at the time the original note was signed, other than that the defendant was "introduced to me as a signer and I accepted him as a signer." The plaintiff further testified that he did not remember whether or

not the name of the bank was stamped on the present note when it was delivered to him, and that he supposed that "the Industrial put it (the stamp) on there." There is no direct evidence tending to prove where the blank form came from, or that the defendant expressly authorized or assented to the addition of the bank's name after he had indorsed the note, or whether the stamped words were put on the note after it had been left by the plaintiff at the bank for collection. The defendant's brother, the maker of the note, died before this case was tried in the superior court.

The defendant maintains that, under the facts appearing in this case, the addition of the place of payment in the note, without his knowledge or consent, released him from all liability as an indorser, and therefore that the trial justice erred in directing a verdict for the plaintiff. On the other hand, the plaintiff claims that the defendant, having seen fit to indorse a note with the place of payment left blank, impliedly authorized the plaintiff or his representative to insert the name of the place where the note would be payable, or is estopped to question such insertion. The defendant calls our attention to general laws 1923, chapter 227, secs. 130, 131, which set out in substance that an indorser on a promissory note is not liable on his indorsement if the note has been materially altered without his authorization or assent, and also that the adding of the place of payment after indorsement, where no place of payment is specified in the note when it is indorsed, is a material alteration. The plaintiff meets this contention of the defendant by referring to sec. 20 of the same chapter, which provides: "Where the instrument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein. . . ."

Different views of these sections and of the questions of law arising thereunder are treated in a note in 31 L. R. A. (N. S.) 643. We are of the opinion, however, that, on the record in the instant case, the matter of the construction

and scope of the sections of the Negotiable Instruments Act, above referred to, is not now properly before us, because certain material issues of fact raised by the conflicting evidence appearing herein have not yet been decided by a jury.

First, the question of whether or not the place of payment was on the note in suit at the time the defendant signed it as indorser must be determined from the evidence presented. Second, the defendant sets up by way of defense a specific agreement or understanding with the plaintiff, who in the instant case is the payee of the note sued on, to the effect that when the original note was indorsed by the defendant it was agreed that it was not to be made payable at a bank, and that all transactions relating to the note were to take place at the plaintiff's store. The defendant relies on such alleged agreement as negativing any right or authority to insert in the present note, which is merely a renewal of the original note, the name of any bank as the place of payment. Whether or not any such agreement, as is claimed by the defendant and denied by the plaintiff, was actually made by the parties is an important issue of fact to be passed upon by a jury. The determination of these material questions of fact will bear upon the construction to be placed upon the sections of the Negotiable Instruments Act above mentioned, and their applicability in the instant case. The direction of a verdict for the plaintiff, therefore, under the circumstances appearing in this case, was error.

In view of this finding, the remaining contention of the defendant might well be passed over without reference, but as it may be advanced at another trial of this case on substantially the same evidence as is now before us, we deem it advisable to briefly consider it at this time. A notary public, called as a witness for the plaintiff, testified that, in accordance with his usual custom, notice of the dishonor of the note by the maker was prepared by a stenographer

under his direction and supervision. He further gave evidence that this notice, which fully identified the note, and his record of the transaction, were personally checked back and compared by him, and that he himself mailed the notice, which had proper postage thereon and was addressed to the defendant at his residence. The notary's record book, with a complete entry under date of April 12, 1934, of his doings respecting the note, is an exhibit in the case.

The defendant denied having received any such notice, and contends that this denial raises an issue of fact as to whether the notice was mailed by the notary. He argues in substance that, as proof of mailing presumes receipt of a letter, so conversely proof of non-receipt of a letter should be evidence that there was no proper mailing thereof. We do not accept this contention. The fact that a notice is not received, if coupled with other evidence as to improper postage, addressing, mailing and the like, conceivably might raise the issue as to whether or not there was a proper mailing of the notice of dishonor of a negotiable instrument so as to affect an indorser. The mere statement, however, that such a notice was not received by the person sought to be charged, standing alone, is not evidence that the notice was not mailed, and does not raise a question of fact on that issue. To hold otherwise would be to seriously affect the stability and usefulness of negotiable instruments, and the enforcement of rights of the holders thereof. Based on the record herein, the contention of the defendant on this point is without merit.

The defendant's exception to the direction of a verdict for the plaintiff is sustained, and the case is remitted to the superior court for a new trial.

*John C. McOsker,* for plaintiff.
*Edgar V. F. McCrillis, Uldrich Pettine,* for defendant.